**CYBERSELL, INC., an Arizona corporation, Plaintiff–Appellant,**

v.

**CYBERSELL, INC., a Florida corporation; Webhorizons, Inc., a Florida corporation; Websolvers, Inc., a Florida corporation; Samuel C. Certo, husband; Jane Doe Certo, wife; Matt Certo, husband; Jane Doe II Certo, wife; Cybergate, Inc., a corporation; Sprintnet, a corporation, Defendants–Appellees.**

No. 96–17087.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 6, 1997.

Decided Dec. 2, 1997.

Connie J. Mableson, Phoenix, AZ, for plaintiff-appellant.

Michael R. Levin and Christopher T. Hill, Rumberger, Kirk & Caldwell, Orlando, FL, for defendants-appellees.

Before: WOOD, Jr.,[*] RYMER, and TASHIMA, Circuit Judges.

RYMER, Circuit Judge.

We are asked to hold that the allegedly infringing use of a service mark in a home page on the World Wide Web suffices for personal jurisdiction in the state where the holder of the mark has its principal place of business. Cybersell, Inc., an Arizona corporation that advertises for commercial services over the Internet, claims that Cybersell, Inc., a Florida corporation that offers web page construction services over the Internet, infringed its federally registered mark and should be amenable to suit in Arizona because cyberspace is without borders and a web site which advertises a product or service is necessarily intended for use on a world wide basis. The district court disagreed, and so do we. Instead, applying our normal "minimum contacts" analysis, we conclude that it would not comport with "traditional notions of fair play and substantial justice," *Core–Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1485 (9th Cir.1993) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)), for Arizona to exercise personal jurisdiction over an allegedly infringing Florida web site advertiser who has no contacts with Arizona other than maintaining a home page that is accessible to Arizonans, and everyone else, over the Internet. We therefore affirm.

I

Cybersell, Inc. is an Arizona corporation, which we will refer to as Cybersell AZ. It was incorporated in May 1994 to provide Internet and web advertising and marketing services, including consulting. The principals of Cybersell AZ are Laurence Canter and Martha Siegel, known among web users for first "spamming" the Internet.[1] Mainstream print media carried the story of Canter and Siegel and their various efforts to commercialize the web.

On August 8, 1994, Cybersell AZ filed an application to register the name "Cybersell" as a service mark. The application was approved and the grant was published on October 30, 1995. Cybersell AZ operated a web site using the mark from August 1994 through February 1995. The site was then taken down for reconstruction.

Meanwhile, in the summer of 1995, Matt Certo and his father, Dr. Samuel C. Certo, both Florida residents, formed Cybersell, Inc., a Florida corporation (Cybersell FL), with its principal place of business in Orlando. Matt was a business school student at Rollins College, where his father was a professor; Matt was particularly interested in the Internet, and their company was to provide business consulting services for strategic management and marketing on the web. At the time the Certos chose the name "Cybersell" for their venture, Cybersell AZ had no home page on the web nor had the PTO granted their application for the service mark.

As part of their marketing effort, the Certos created a web page at http://www.cybsell.com/cybsell/index.htm. The home page has a logo at the top with "CyberSell" over a depiction of the planet earth, with the caption underneath "Professional Services for the World Wide Web" and a local (area code 407) phone number. It proclaims in large letters "Welcome to CyberSell!" A hypertext link[2]

---

[*] Honorable Harlington Wood, Jr., Senior Circuit Judge, United States Court of Appeals for the Seventh Circuit, sitting by designation.

1. Spamming refers to the posting indiscriminately of advertisements to news groups on the web. Unlike crossposting, spamming individually posts the advertisement to each news group, requiring the recipient to delete the message from each news group to which she has subscribed.

2. A hypertext link allows a user to move directly from one web location to another by using the mouse to click twice on the colored link.

allows the browser to introduce himself, and invites a company not on the web—but interested in getting on the web—to "Email us to find out how!"

Canter found the Cybersell FL web page and sent an e-mail on November 27, 1995 notifying Dr. Certo that "Cybersell" is a service mark of Cybersell AZ. Trying to disassociate themselves from Canter and Siegel, the Certos changed the name of Cybersell FL to WebHorizons, Inc. on December 27 (later it was changed again to WebSolvers, Inc.) and by January 4, 1996, they had replaced the CyberSell logo at the top of their web page with WebHorizons, Inc. The WebHorizons page still said "Welcome to Cyber-Sell!"

Cybersell AZ filed the complaint in this action January 9, 1996 in the District of Arizona, alleging trademark infringement, unfair competition, fraud, and RICO violations. On the same day Cybersell FL filed suit for declaratory relief with regard to use of the name "Cybersell" in the United States District Court for the Middle District of Florida, but that action was transferred to the District of Arizona and consolidated with the Cybersell AZ action. Cybersell FL moved to dismiss for lack of personal jurisdiction. The district court denied Cybersell AZ's request for a preliminary injunction, then granted Cybersell FL's motion to dismiss for lack of personal jurisdiction.[3] Cybersell AZ timely appealed.

## II

The general principles that apply to the exercise of personal jurisdiction are well known. As there is no federal statute governing personal jurisdiction in this case, the law of Arizona applies. Under Rule 4.2(a) of the Arizona Rules of Civil Procedure, an Arizona court

> may exercise personal jurisdiction over parties, whether found within or outside the state, to the maximum extent permitted by the Constitution of this state and the Constitution of the United States.

The Arizona Supreme Court has stated that under Rule 4.2(a), "Arizona will exert personal jurisdiction over a nonresident litigant to the maximum extent allowed by the federal constitution." *Uberti v. Leonardo,* 181 Ariz. 565, 569, 892 P.2d 1354, 1358, *cert. denied,* —— U.S. ——, 116 S.Ct. 273, 133 L.Ed.2d 194 (1995). Thus, Cybersell FL may be subject to personal jurisdiction in Arizona so long as doing so comports with due process.

A court may assert either specific or general jurisdiction over a defendant. *See Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984). Cybersell AZ concedes that general jurisdiction over Cybersell FL doesn't exist in Arizona, so the only issue in this case is whether specific jurisdiction is available.

■ We use a three-part test to determine whether a district court may exercise specific jurisdiction over a nonresident defendant:

> (1) The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections[;] (2)[t]he claim must be one which arises out of or results from the defendant's forum-related activities[; and] (3)[e]xercise of jurisdiction must be reasonable.

*Ballard v. Savage,* 65 F.3d 1495, 1498 (9th Cir.1995) (citations omitted).

Cybersell AZ argues that the test is met because trademark infringement occurs when the passing off of the mark occurs, which in this case, it submits, happened when the name "Cybersell" was used on the Internet in connection with advertising. Cybersell FL, on the other hand, contends that a party should not be subject to nationwide, or perhaps worldwide, jurisdiction simply for using the Internet.

## A

■ Since the jurisdictional facts are not in dispute, we turn to the first requirement, which is the most critical. As the Supreme Court emphasized in *Hanson v. Denckla,* "it

---

**3.** In its October 21, 1996 judgment, the district court dismissed both of the consolidated actions.

is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958). We recently explained in *Ballard* that

> the "purposeful availment" requirement is satisfied if the defendant has taken deliberate action within the forum state or if he has created continuing obligations to forum residents. "It is not required that a defendant be physically present within, or have physical contacts with, the forum, provided that his efforts 'are purposefully directed' toward forum residents."

*Ballard*, 65 F.3d at 1498 (citations omitted).

We have not yet considered when personal jurisdiction may be exercised in the context of cyberspace, but the Second and Sixth Circuits have had occasion to decide whether personal jurisdiction was properly exercised over defendants involved in transmissions over the Internet, *see CompuServe, Inc. v. Patterson*, 89 F.3d 1257 (6th Cir.1996); *Bensusan Restaurant Corp. v. King*, 937 F.Supp. 295 (S.D.N.Y.1996), *aff'd*, 126 F.3d 25 (2d Cir.1997), as have a number of district courts. Because this is a matter of first impression for us, we have looked to all of these cases for guidance. Not surprisingly, they reflect a broad spectrum of Internet use on the one hand, and contacts with the forum on the other. As *CompuServe* and *Bensusan* seem to represent opposite ends of the spectrum, we start with them.[4]

CompuServe is a computer information service headquartered in Columbus, Ohio, that contracts with individual subscribers to provide access to computing and information services via the Internet. It also operates as an electronic conduit to provide computer software products to its subscribers. Computer software generated and distributed in this way is often referred to as "shareware." Patterson is a Texas resident who subscribed to CompuServe and placed items of "shareware" on the CompuServe system pursuant to a "Shareware Registration Agreement" with CompuServe which provided, among other things, that it was "to be governed by and construed in accordance with" Ohio law. During the course of this relationship, Patterson electronically transmitted thirty-two master software files to CompuServe, which CompuServe stored and displayed to its subscribers. Sales were made in Ohio and elsewhere, and funds were transmitted through CompuServe in Ohio to Patterson in Texas. In effect, Patterson used CompuServe as a distribution center to market his software. When Patterson threatened litigation over allegedly infringing CompuServe software, CompuServe filed suit in Ohio seeking a declaratory judgment of noninfringement. The court found that Patterson's relationship with CompuServe as a software provider and marketer was a crucial indicator that Patterson had knowingly reached out to CompuServe's Ohio home and benefitted from CompuServe's handling of his software and fees. Because Patterson had chosen to transmit his product from Texas to CompuServe's system in Ohio, and that system provided access to his software to others to whom he advertised and sold his product, the court concluded that Patterson purposefully availed himself of the privilege of doing business in Ohio.

By contrast, the defendant in *Bensusan* owned a small jazz club known as "The Blue Note" in Columbia, Missouri. He created a general access[5] web page that contained information about the club in Missouri as well as a calendar of events and ticketing information. Tickets were not available through the web site, however. To order tickets, web browsers had to use the names and addresses of ticket outlets in Columbia or a telephone number for charge-by-phone ticket or-

---

**4.** Since *Bensusan* was decided on the basis of New York's long-arm statute (which requires presence in the forum and is therefore more stringent than due process), its holding is not instructive, but the district court's analysis is. The district court dismissed for lack of personal jurisdiction under the long-arm statute as well as on due process grounds, while the Second Circuit affirmed on the statute and did not discuss the constitutional issue.

**5.** A general access site requires no authentication or access code for entry. *Bensusan*, 937 F.Supp. at 297. Thus, the site is accessible to anyone who has access to the Internet.

ders, which were available for pick-up on the night of the show at the Blue Note box office in Columbia. Bensusan was a New York corporation that owned "The Blue Note," a popular jazz club in the heart of Greenwich Village. Bensusan owned the rights to the "The Blue Note" mark. Bensusan sued King for trademark infringement in New York. The district court distinguished King's passive web page, which just posted information, from the defendant's use of the Internet in *CompuServe* by observing that whereas the Texas Internet user specifically targeted Ohio by subscribing to the service, entering into an agreement to sell his software over the Internet, advertising through the service, and sending his software to the service in Ohio,

> King has done nothing to purposefully avail himself of the benefits of New York. King, like numerous others, simply created a Web site and permitted anyone who could find it to access it. Creating a site, like placing a product into the stream of commerce, may be felt nationwide-or even worldwide-but, without more, it is not an act purposefully directed toward the forum state.

*Bensusan*, 937 F.Supp. at 301 (citing the plurality opinion in *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 112, 107 S.Ct. 1026, 1032, 94 L.Ed.2d 92 (1992)). Given these facts, the court reasoned that the argument that the defendant "should have foreseen that users could access the site in New York and be confused as to the relationship of the two Blue Note clubs is insufficient to satisfy due process." *Id.* at 301.

"Interactive" web sites present somewhat different issues. Unlike passive sites such as the defendant's in *Bensusan*, users can exchange information with the host computer when the site is interactive. Courts that have addressed interactive sites have looked to the "level of interactivity and commercial nature of the exchange of information that occurs on the Web site" to determine if sufficient contacts exist to warrant the exercise of jurisdiction. *See, e.g., Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119, 1124 (W.D.Pa.1997) (finding purposeful availment based on Dot Com's interactive web site and

contracts with 3000 individuals and seven Internet access providers in Pennsylvania allowing them to download the electronic messages that form the basis of the suit); *Maritz, Inc. v. Cybergold, Inc.*, 947 F.Supp. 1328, 1332–33 (E.D.Mo.) (browsers were encouraged to add their address to a mailing list that basically subscribed the user to the service), *reconsideration denied*, 947 F.Supp. 1338 (1996).

Cybersell AZ points to several district court decisions which it contends have held that the mere advertisement or solicitation for sale of goods and services on the Internet gives rise to specific jurisdiction in the plaintiff's forum. However, so far as we are aware, no court has ever held that an Internet advertisement alone is sufficient to subject the advertiser to jurisdiction in the plaintiff's home state. *See, e.g., Smith v. Hobby Lobby Stores*, 968 F.Supp. 1356 (W.D.Ark. 1997) (no jurisdiction over Hong Kong defendant who advertised in trade journal posted on the Internet without sale of goods or services in Arkansas). Rather, in each, there has been "something more" to indicate that the defendant purposefully (albeit electronically) directed his activity in a substantial way to the forum state.

*Inset Systems, Inc. v. Instruction Set, Inc.*, 937 F.Supp. 161 (D.Conn.1996), is the case most favorable to Cybersell AZ's position. Inset developed and marketed computer software throughout the world; Instruction Set, Inc. (ISI) provided computer technology and support. Inset owned the federal trademark "INSET"; but ISI obtained "INSET.COM" as its Internet domain address for advertising its goods and services. ISI also used the telephone number "1–800–US–INSET." Inset learned of ISI's domain address when it tried to get the same address, and filed suit for trademark infringement in Connecticut. The court reasoned that ISI had purposefully availed itself of doing business in Connecticut because it directed its advertising activities via the Internet and its toll-free number toward the state of Connecticut (and all states); Internet sites and toll-free numbers are designed to communicate with people and their businesses in every state; an Internet advertisement could reach as many as 10,000

Internet users within Connecticut alone; and once posted on the Internet, an advertisement is continuously available to any Internet user.

Cybersell AZ further points to the court's statement in *EDIAS Software International, L.L.C. v. BASIS International Ltd.*, 947 F.Supp. 413 (D.Ariz.1996), that a defendant "should not be permitted to take advantage of modern technology through an Internet Web page and forum and simultaneously escape traditional notions of jurisdiction." *Id.* at 420. In that case, EDIAS (an Arizona company) alleged that BASIS (a New Mexico company) sent advertising and defamatory statements over the Internet through e-mail, its web page, and forums. However, the court did not rest its minimum contacts analysis on use of the Internet alone; in addition to the Internet, BASIS had a contract with EDIAS, it made sales to EDIAS and other Arizona customers, and its employees had visited Arizona during the course of the business relationship with EDIAS.

Some courts have also given weight to the number of "hits" received by a web page from residents in the forum state, and to other evidence that Internet activity was directed at, or bore fruit in, the forum state. *See, e.g., Heroes, Inc. v. Heroes Found.*, 958 F.Supp. 1 (D.D.C.1996) (web page that solicited contributions and provided toll-free telephone number along with the defendant's use on the web page of the allegedly infringing trademark and logo, along with other contacts, provided sustained contact with the District), *amended by* No. Civ.A. 96–1260(TAF) (1997); *Pres–Kap, Inc. v. System One, Direct Access, Inc.*, 636 So.2d 1351 (Fla. Dist.Ct.App.1994) (declining jurisdiction where defendant consumer subscribed to plaintiff's travel reservation system but was solicited and serviced instate by the supplier's local representative).

In sum, the common thread, well stated by the district court in *Zippo*, is that "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet." *Zippo*, 952 F.Supp. at 1124.

## B

Here, Cybersell FL has conducted no commercial activity over the Internet in Arizona. All that it did was post an essentially passive home page on the web, using the name "CyberSell," which Cybersell AZ was in the process of registering as a federal service mark. While there is no question that anyone, anywhere could access that home page and thereby learn about the services offered, we cannot see how from that fact alone it can be inferred that Cybersell FL deliberately directed its merchandising efforts toward Arizona residents.

Cybersell FL did nothing to encourage people in Arizona to access its site, and there is no evidence that any part of its business (let alone a continuous part of its business) was sought or achieved in Arizona. To the contrary, it appears to be an operation where business was primarily generated by the personal contacts of one of its founders. While those contacts are not entirely local, they aren't in Arizona either. No Arizonan except for Cybersell AZ "hit" Cybersell FL's web site. There is no evidence that any Arizona resident signed up for Cybersell FL's web construction services. It entered into no contracts in Arizona, made no sales in Arizona, received no telephone calls from Arizona, earned no income from Arizona, and sent no messages over the Internet to Arizona. The only message it received over the Internet from Arizona was from Cybersell AZ. Cybersell FL did not have an "800" number, let alone a toll-free number that also used the "Cybersell" name. The interactivity of its web page is limited to receiving the browser's name and address and an indication of interest—signing up for the service is not an option, nor did anyone from Arizona do so. No money changed hands on the Internet from (or through) Arizona. In short, Cybersell FL has done no act and has consummated no transaction, nor has it performed any act by which it purposefully availed itself of the privilege of conducting activities, in Arizona, thereby invoking the benefits and protections of Arizona law.

■ We therefore hold that Cybersell FL's contacts are insufficient to establish

"purposeful availment." Cybersell AZ has thus failed to satisfy the first prong of our three-part test for specific jurisdiction. We decline to go further solely on the footing that Cybersell AZ has alleged trademark infringement over the Internet by Cybersell FL's use of the registered name "Cybersell" on an essentially passive web page advertisement. Otherwise, every complaint arising out of alleged trademark infringement on the Internet would automatically result in personal jurisdiction wherever the plaintiff's principal place of business is located. That would not comport with traditional notions of what qualifies as purposeful activity invoking the benefits and protections of the forum state. *See Peterson v. Kennedy*, 771 F.2d 1244, 1262 (9th Cir.1985) (series of phone calls and letters to California physician regarding plaintiff's injuries insufficient to satisfy first prong of test).

## III

■ Cybersell AZ also invokes the "effects" test employed in *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), and *Core–Vent Corp. v. Nobel Industries*, 11 F.3d 1482 (9th Cir.1993), with respect to intentional torts directed to the plaintiff, causing injury where the plaintiff lives. However, we don't see this as a *Calder* case. Because Shirley Jones was who she was (a famous entertainer who lived and worked in California) and was libeled by a story in the National Enquirer, which was published in Florida but had a nationwide circulation with a large audience in California, the Court could easily hold that California was the "focal point both of the story and of the harm suffered" and so jurisdiction in California based on the "effects" of the defendants' Florida conduct was proper. *Calder*, 465 U.S. at 789, 104 S.Ct. at 1486. There is nothing comparable about Cybersell FL's web page. Nor does the "effects" test apply with the same force to Cybersell AZ as it would to an individual, because a corporation

"does not suffer harm in a particular geographic location in the same sense that an individual does." *Core–Vent*, 11 F.3d at 1486. Cybersell FL's web page simply was not aimed intentionally at Arizona knowing that harm was likely to be caused there to Cybersell AZ.[6]

## IV

We conclude that the essentially passive nature of Cybersell FL's activity in posting a home page on the World Wide Web that allegedly used the service mark of Cybersell AZ does not qualify as purposeful activity invoking the benefits and protections of Arizona. As it engaged in no commercial activity and had no other contacts via the Internet or otherwise in Arizona, Cybersell FL lacks sufficient minimum contacts with Arizona for personal jurisdiction to be asserted over it there. Accordingly, its motion to dismiss for lack of personal jurisdiction was properly granted.

AFFIRMED.

**6.** Likewise unpersuasive is Cybersell AZ's reliance on *Panavision International v. Toeppen*, 938 F.Supp. 616 (C.D.Cal.1996), where the court found the "purposeful availment" prong satisfied by the effects felt in California, the home state of Panavision, from Toeppen's alleged out-of-state scheme to register domain names using the trademarks of California companies, including Panavision, for the purpose of extorting fees from them. Again, there is nothing analogous about Cybersell FL's conduct.