586 So.2d 1191 (1991)
INTERCONTINENTAL CORP., et al., Appellants,
v.
ORLANDO REGIONAL MEDICAL CENTER, INC., Appellee.
No. 90-2101.
District Court of Appeal of Florida, Fifth District.
September 12, 1991.
Rehearing Denied October 15, 1991.
*1192 John C. Lenderman of Harris, Barrett, Mann & Dew, St. Petersburg, for appellants.
Stephen J. Knox of Mateer, Harbert & Bates, P.A., Orlando, for appellee.
GRIFFIN, Judge.
This is an appeal from a non-final order denying appellants' motion to dismiss for lack of in personam jurisdiction. The issue on appeal concerns whether appellants were engaged in a business venture or committed a tortious act within the state of Florida within the meaning of Florida's long-arm statute, section 48.193, Florida Statutes (1989).
Plaintiff/appellee Orlando Regional Medical Center, Inc. ("ORMC") is a Florida corporation with facilities in Orange County, Florida. Appellant Intercontinental Corporation ("Intercontinental") is an Indiana corporation with its principal place of business in Indianapolis, Indiana. Appellants Medical Economics Network ("Medical Economics") and Physicians' Hospital Review, Ltd. ("Physicians"), its wholly owned subsidiary, are Kentucky corporations with their sole offices located in Kentucky. None of appellants is registered to do business in Florida. None maintains any office or agent in Florida or has any contractual relationship with any Florida citizen.
Intercontinental administers insurance claims for foreign insurance companies that insure foreign nationals visiting the United States. One of the services provided by Intercontinental is to review for reasonableness the medical charges incurred by the insureds. Intercontinental in turn employs Medical Economics and/or Physicians to conduct the "reasonableness" evaluation. According to appellants' correspondence, this is done initially by a registered nurse who reviews the bill to determine whether the charges are related to the illness. Then the charges are analyzed by computer, using a specialized data base developed by Medical Economics that contains, among other information, the actual cost of drugs and other items dispensed by the hospital. According to the correspondence in the record, in evaluating the reasonableness of items charged, Medical Economics begins with the "retail market price" for each item, applies a multiplier, adds 250 percent and, then, if the billed amount exceeds this "reasonable" sum, an adjustment is made. Medical Economics and Physicians are compensated on a fixed fee plus a contingent fee basis, earning 30% of all reductions obtained on behalf of the client insurance carrier.
All reviews are conducted in Kentucky and the recommendations forwarded to Intercontinental in Illinois. Intercontinental then forwards the information to the foreign insurance company. If a decision is made to dispute the hospital bill on the basis of reasonableness, either Intercontinental, Medical Economics or Physicians advises the hospital. If the hospital initially does not agree to accept the reduced sum, correspondence may continue in an effort to obtain better documentation or justification for the charges, to persuade the hospital to take less money and to dissuade the hospital from attempting to collect the difference directly from the patient. In the event a collection suit is eventually filed against the patient, Medical Economics is obligated to defend the patient.
The dispute in this case arises out of the review by Intercontinental and Medical Economics of medical bills incurred by twenty-eight visiting foreign nationals who received medical treatment at ORMC. In the amended four count complaint, ORMC alleges that appellants tortiously interfered with these twenty-eight contracts between ORMC and its patients by advising the patients not to pay a total of $125,904.49 worth of charges considered unreasonable *1193 by Medical Economics. The remaining count is an action for conspiracy against the same defendants. The jurisdictional allegations are:
4. That this court has jurisdiction over the Defendants pursuant to Florida Statutes § 48.193. Defendants were carrying on a business venture in Florida which business venture was to interfere with Florida hospital patient contracts in an attempt to profit by coercing said hospitals to accept less than reasonable charges billed to patients for services rendered. Defendants sent numerous and repeated letters to Florida hospitals, including Plaintiff, advising that Defendants would inject themselves between the hospital and its patient should the hospital not accept Defendants' dictated terms. Defendants sent a representative to Florida to attempt to secure unjustified reductions in Plaintiff's billings. The patient services which are the subject of this complaint were rendered in Florida. The patient contracts and business relationships required that payment be made in Florida. After Defendants' interference through letters to Florida, phone calls to Florida and sending a representative to Florida, the patient contracts were breached in Florida. Defendants were actively engaged in the solicitation of reduced medical billings for profit in the state of Florida. Defendants advised Plaintiff both in person in the state of Florida and by letters and phone calls sent and received in the state of Florida that they would take advantage of Florida law should Plaintiff attempt to collect its patient billings. Defendants advised Plaintiff that they would hire Florida attorneys at their own expense to prevent Plaintiff from collecting patient billings in the state of Florida.
Appellants entered a special appearance and moved inter alia to dismiss the complaint for lack of jurisdiction. In support of their motion, they submitted the affidavit of Intercontinental's current manager of operations, Kimberly Bell, and the affidavit of Medical Economics' former president, Robert Riley. The two affidavits contain essentially the same statements: (1) appellants never carried on a business venture in Florida; (2) appellants never solicited reduced medical billings for profit in Florida; (3) the only person who travelled to Florida on behalf of appellants was Fred E. Fischer, an attorney for Medical Economics and Physicians who met solely with ORMC's counsel; (4) appellants never told ORMC that they would take advantage of Florida law or hire Florida attorneys; and (5) appellants are not registered to do business in Florida and are not subject to regulation by the insurance commissioner.
ORMC then took the depositions of Riley and Bell, whose testimony describes the general procedures used by Intercontinental, Medical Economics and Physicians to review the reasonableness of hospital charges, but not the specifics of the twenty-eight ORMC patients' accounts. ORMC also submitted the affidavit of Marc Feuerman, ORMC's Director of Patient Accounting, who reiterated certain allegations of the complaint, principally that by letter and by telephone appellants threatened to intervene between ORMC and their patients and that appellants' purpose was to obtain "completely unjustified" reductions in ORMC's medical charges. Also attached to the Feuerman affidavit was correspondence from appellants regarding several of the ORMC patient accounts. The correspondence from Medical Economics typically contained a statement similar to the following:
If you continue on your present course, it would appear that litigation can not be avoided. While we regret the necessity to litigate this dispute, we will continue to instruct both the insurance company and the patient to dispute the reasonableness of your charges. And, as noted in our previous letter if this dispute results in a collection actions [sic] Medical Economics *1194 Network Ltd. will provide a defense of the reasonableness of this review for the patient. And, if in the unlikely event a court overrules our position, we stand ready along with the insurance company to pay any damages, court costs, interest or penalties for the patient.
Correspondence from Physicians was similar, if less grammatical and more colorful.[1] The only letter in the record from Intercontinental stated that it had made its recommendation for a "revised amount" to the European carrier based on a review by Physicians.
The trial court denied the motion to dismiss for lack of in personam jurisdiction. On appeal, the parties agree that resolution of the jurisdictional question centers on whether appellants were engaged in a business venture under section 48.193(1)(a), Florida Statutes (1989), or committed a tortious act within the state of Florida pursuant to section 48.193(1)(b). We conclude there is no in personam jurisdiction and reverse.
The most that can be said in support of appellants' "operating, conducting, engaging in or carrying on a business or business venture in this state" is that because Florida happened to be where some insureds of appellants' client companies became ill or were injured (which appellants could anticipate might occur), certain of the hospital bills appellants reviewed were generated by at least one Florida hospital, ORMC. Appellants elected to challenge ORMC's bills and expected to derive a profit from convincing ORMC to accept less money on their billings than the face amount. Appellants also had a contractual duty to defend suits against the foreign insureds who accepted their evaluation of the ORMC bills, even if such suits were brought in Florida.[2]
Appellants conducted their business activity entirely outside Florida with two exceptions: they made telephone calls or wrote letters into the state urging ORMC to accept the adjusted charges, and, on one occasion, counsel for appellants came to Florida, at appellee's invitation, to meet with ORMC's counsel to discuss the ongoing dispute.
We doubt appellants' contacts with ORMC would even meet the due process threshold required to sustain a finding of in personam jurisdiction. The plaintiff must establish a defendant has certain minimum contacts with the forum state if he wishes to bring the defendant within the jurisdiction of the court. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). The defendant must have performed some act to purposefully avail himself of the privilege of conducting activities within the forum state, thus invoking the benefits of its laws. Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283, 1298, reh. denied, 358 U.S. 858, 79 S.Ct. 10, 3 L.Ed.2d 92 (1958). A defendant may not be haled into court in a jurisdiction where his contacts with that state are "random", "fortuitous" or "attenuated". 471 U.S. at 486, 105 S.Ct. at 2183, 85 L.Ed.2d at 549. See Cauff, Lippman & Co. v. Apogee Finance Group, Inc., 745 F. Supp. 678 (S.D.Fla. 1990) (exchange of information and negotiations with Florida company by letter, telex or telephone from out of state and one meeting in Florida at plaintiff's request not enough to establish minimum contacts); SDM Corp. v. Kevco Financial Corp., 540 So.2d 931 (Fla. 2d DCA 1989) (single visit by representative of out-of-state company to Florida and contract with Florida resident insufficient to establish minimum contacts). Although, unquestionably, the communications with ORMC were purposefully directed by appellants to a Florida hospital, the fact that Florida was where the foreign insureds were treated was fortuitous, the contacts between appellants *1195 and appellee were attenuated and appellants' alleged invocation of the benefits and protections of Florida law is dubious. We need not decide this constitutional issue, however, because appellants' activities do not meet the requirements for jurisdiction contained in section 48.193(1)(a) or (b), Florida Statutes.
Appellants' letters and telephone calls from Kentucky or Indiana into Florida seeking to convince ORMC to reduce their bills do not constitute "doing business in Florida" for purposes of 48.193(1), Florida Statutes. This statute is designed to reach individuals or entities who act in this state, Boggs v. Yoder, 546 So.2d 1097 (Fla. 5th DCA 1989), or who perform specifically delineated acts outside the state that have repercussions within the state, most notably, causing personal injury or property damage in Florida or failing to perform contractual obligations due in Florida. McLean Financial Corp. v. Winslow Loudermilk Corp., 509 So.2d 1373 (Fla. 5th DCA 1987). In Florida, long arm statutes are strictly construed, see, e.g., Bank of Wessington v. Winters Government Securities Corp., 361 So.2d 757, 759 (Fla. 4th DCA 1978), and we cannot read the language of the statute broadly enough to characterize appellants' communications as the carrying on of a business venture in this state. In the present case, appellants did not act inside the state, except for the single meeting attended by appellants' counsel, and the categories embracing out-of-state activities do not apply. See Dinsmore v. Martin Blumenthal Assoc., Inc., 314 So.2d 561 (Fla. 1975); Aetna Life & Casualty Co. v. Therm-O-Disc, Inc., 488 So.2d 83, 87 (Fla. 1st DCA 1986), aff'd, 511 So.2d 992 (Fla. 1987); see also Oriental Imports and Exports, Inc. v. Maduro & Curiel's Bank, N.V., 701 F.2d 889 (11th Cir.1983). We conclude appellants were not engaged in a business venture in Florida; rather they were engaged in a business venture in Indiana or Kentucky that from time to time entailed communication with at least one Florida hospital. This will not support jurisdiction under 48.193(1)(a).
We also reject appellee's tort theory of jurisdiction pursuant to section 48.193(1)(b). Without deciding whether appellee has adequately alleged the tort of tortious interference at all, we are convinced the mere act of communicating with the promisee in Florida, in an effort to convince the promisee not to insist on contractual rights, does not constitute commission of a tortious act in this state.[3]
The order denying appellants' motions to dismiss for lack of in personam jurisdiction is reversed and the cause is remanded with instructions to enter an order dismissing each defendant for lack of jurisdiction.
ORDER REVERSED; REMANDED.
COWART and DIAMANTIS, JJ., concur.
NOTES
[1] For example, Physician's pledged ominously to "seek review by the fourth estate" if ORMC sought to collect the excess from the patient.
[2] The record does not indicate that any such suits had ever been filed in Florida.
[3] The record does not show that any of the twenty-eight ORMC patients were in Florida when (or if ever) told not to pay the excess charges.