661 So.2d 79 (1995)
John W. RAFAL, Appellant,
v.
William G. MESICK, Jr., Individually and As Trustee of the Nuclear Power Assurance Company Money Purchase Pension Plan and Joyce C. Mesick, Appellees.
No. 94-03364.
District Court of Appeal of Florida, Second District.
August 18, 1995.
Rehearing Denied September 22, 1995.
Bennett Falk of Morgan, Lewis & Bockius, Miami, for appellant.
Frederick C. Kramer of Law Offices of Frederick C. Kramer, Marco Island, for appellees.
FULMER, Judge.
John Rafal appeals the denial of his motion to dismiss for lack of personal jurisdiction. We have jurisdiction pursuant to Florida Rules of Appellate Procedure 9.030(b)(1)(B) and 9.130(a)(3)(C)(i). We reverse because Rafal's contacts with Florida do not meet the requirements for jurisdiction under any provision of Florida's long-arm statute.
The facts are essentially undisputed. In 1984, the appellees, William G. Mesick, Jr. and Joyce C. Mesick, contacted appellant John W. Rafal at his Connecticut office about opening an investment account with him. The Mesicks subsequently invested in several limited partnerships through Rafal. These investments, which are the subject of this lawsuit, were purchased in the Mesicks' Connecticut account while the Mesicks were residents of Connecticut. The Mesicks moved to Florida in 1988. Rafal and employees of his firm, John W. Rafal & Associates, Inc., continued to keep the Mesicks informed about the status of their Connecticut account through correspondence.
*80 In February 1994, the Mesicks sued Rafal individually, alleging that he breached his fiduciary duty to them regarding the investments. Rafal was personally served in Connecticut. Rafal filed a motion to dismiss for lack of personal jurisdiction contending that his contacts with Florida were insufficient to satisfy either the Florida long-arm statute or constitutional due process requirements. In an accompanying affidavit, Rafal stated that he has been a resident of Connecticut since 1949; that he conducts all of his business in Connecticut and has never maintained an office, mailing address or telephone number in Florida; that he has been a securities broker registered with Connecticut since 1975 and registered with Florida since 1985; that he has never solicited business from any Florida resident, either personally, through the mail or through representatives; and that he has never submitted or distributed promotional or advertising materials within Florida. Because Rafal's affidavit refuted the jurisdictional allegations in the complaint, the burden shifted to the Mesicks to prove by affidavit facts that would support long-arm jurisdiction over Rafal.
The Mesicks filed an opposing affidavit and attached copies of twenty-seven letters received by the Mesicks from Rafal's office between 1989 and 1993, plus four other single-page documents pertaining to financial accounts which indicated that Rafal was the Mesicks' account executive or representative for purposes of each account. None of these documents show that Rafal was doing business in Florida in his individual capacity. And, all of the letters pertained to the maintenance of the Mesicks' Connecticut account. Most of the letters were simply cover letters forwarding Asset Valuations or other information regarding the status of the account and only one of the letters was sent by Rafal himself.
In order for a nonresident defendant to be subject to the jurisdiction of the Florida courts, two criteria must be met. First, the nonresident defendant must have performed one of the acts upon which jurisdiction may be based pursuant to Florida's long-arm statute. Second, if the statutory requirements for jurisdiction are met, the defendant's activities must also constitute sufficient "minimum contacts" with the state of Florida to satisfy federal due process requirements. Venetian Salami Company v. Parthenais, 554 So.2d 499 (Fla. 1989).
The Mesicks contend that both sections 48.193(1)(a) and 48.193(2), Florida Statutes (1993), confer jurisdiction over Rafal in this case.
We first address section 48.193(1)(a) which provides:
Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself and, if he is a natural person, his personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts: (a) Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.
With respect to this subsection, the facts in this case are similar to those of Jasper v. Zara, 595 So.2d 1075 (Fla. 2d DCA 1992), in which this court found no personal jurisdiction. In Jasper, an investor in Florida phoned Jasper in New York seeking financial advice. Jasper subsequently communicated with the Florida investor by letter and telephone, recommending various investments. The investor participated in two real estate limited partnerships based on Jasper's advice and thereafter sued Jasper. Jasper filed an affidavit in support of a motion to dismiss stating that he never had a Florida office or solicited business in Florida or had any connection with Florida except his relationship with the investor. This court found that Jasper was not subject to the personal jurisdiction of Florida courts.
Another similar case is Investors Associates, Inc. v. Moss, 441 So.2d 1144 (Fla. 3d DCA 1983), in which a Florida investor sued a New Jersey stock brokerage firm alleging that the firm caused substantial losses in her account. In finding that there was no jurisdiction over the brokerage firm, the court noted that the firm had offices in and did business in New Jersey, that the agreement *81 between the parties was entered into when the investor was a New Jersey resident, that the firm had no offices or agents in Florida, that the firm had never solicited business in Florida, and that the contact between the parties after the investor's move to Florida was limited to the firm's responding to telephone inquiries from the investor about the status of the account.
In Intercontinental Corp. v. Orlando Regional Medical Ctr., Inc., 586 So.2d 1191 (Fla. 5th DCA 1991), the defendants were non-Florida corporations which were not registered to do business here and had no offices or agents here. The defendants' businesses evaluated and administered insurance claims for other insurance companies. The dispute arose out of twenty-eight medical bills from the plaintiff's hospital which the defendants were reviewing. The plaintiff alleged that the defendants were interfering with contracts between the plaintiff and its patients by advising the patients not to pay. The appellate court noted that the defendants "conducted their business activities entirely outside Florida with two exceptions: they made telephone calls or wrote letters into the state urging [the plaintiff] to accept the adjusted charges, and, on one occasion, counsel for [the defendants] came to Florida" to meet with opposing counsel. Id. at 1195. The court held that the defendants' actions did not constitute doing business in Florida for purposes of § 48.193(1). "In Florida, long arm statutes are strictly construed ... and we cannot read the language of the statute broadly enough to characterize [defendants'] communications as the carrying on of a business venture in this state." Id. at 1195.
In contrast, in Citicorp Ins. Brokers (Marine), Ltd. v. Charman, 635 So.2d 79 (Fla. 1st DCA 1994), the court found that the defendant, a London insurance broker, was doing business in Florida although it had no offices or agents here. The court noted that the defendant "had representatives traveling in the state, visiting the various brokerage offices, gaining clients, procuring insurance for those clients, corresponding with the Florida agents regarding their procurement efforts, and collecting over a half a million dollars in commissions." Id. at 81.
In this case, it is uncontradicted that Rafal did not maintain an office, mailing address or telephone listing in Florida and did not solicit business from any Florida resident. Rafal stated that he only conducts securities transactions for the Connecticut investment accounts of his clients and not for any account maintained in Florida. He sent communications to the Mesicks in Florida solely because they chose to move to Florida and retain the investment account they established in Connecticut. On these facts we hold that the Mesicks failed to prove that Rafal was "operating, conducting, engaging in or, carrying on a business or business venture" in Florida.
Next we address the contention that jurisdiction lies under section 48.193(2) which provides:
A defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity.
The undisputed facts do not support a conclusion that Rafal was engaged in "substantial and not isolated activity" within Florida. To be subject to the general jurisdiction of Florida courts under this subsection, a defendant's activities in Florida must be "continuous and systematic." Milberg Factors, Inc. v. Greenbaum, 585 So.2d 1089, 1091 (Fla. 3d DCA 1991). In Milberg, a factoring and commercial financing institution (Milberg) which had no office or agents in Florida, was sued here. In support of its motion to dismiss, Milberg showed that only five out of 332 factoring agreements signed in the last ten years by Milberg were with Florida-based clients and that those clients represented less than two percent of Milberg's revenues. In response, the plaintiff showed that Milberg had filed numerous UCC financing statements in Florida over the past sixteen years and had obtained at least nine judgments here in the past ten years. The court found these activities insufficient to establish general jurisdiction. A similar result was reached in Ranger Nationwide, Inc. v. Cook, 519 So.2d 1087 (Fla. 3d DCA 1988), where the activities of the defendants, a *82 trucking company and a trucker, consisted of several isolated trucking trips into Florida and the company's use of Florida's highways, from which it derived less than one percent of its revenues.
In a leading United States Supreme Court case, Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984), the court found no general personal jurisdiction because the following activities of a foreign corporation were determined not to be "continuous and systematic general business contacts" with the forum State of Texas: sending its chief executive officer to Houston for a contract negotiation session, accepting checks drawn on a Houston bank, purchasing helicopters, equipment and training services from a Texas corporation for substantial sums, and sending personnel to the Texas corporation's Fort Worth facilities for training.
Rafal's Florida activities are far less substantial than those of the defendants in the above-discussed cases and certainly do not rise to the level of systematic and continuous business contacts. Therefore, we hold that the Mesicks failed to prove that Rafal was "engaged in substantial and not isolated activity" as required by section 48.193(2).
Because we have determined that Rafal is not subject to jurisdiction under Florida's long-arm statute, we need not address the second jurisdictional test of whether he had sufficient minimum contacts with this state to satisfy constitutional due process requirements.
The Mesicks also contend that Rafal's registration with the State of Florida as a securities dealer pursuant to section 517.12, Florida Statutes (1993), gives rise to personal jurisdiction. That section provides that anyone so registering consents to service of process for actions growing out of a violation of Chapter 517. However, the Mesicks' action does not claim a violation of Chapter 517 and, therefore, section 517.12 has no application in this case. Nevertheless, we observe that, even if registration under Chapter 517 did provide a basis for personal jurisdiction over Rafal, the Mesicks failed to serve Rafal according to the requirements of that chapter, i.e., rather than serving the agent designated by Chapter 517, they personally served Rafal in Connecticut.
Because the Mesicks did not meet their burden of proving that the court had personal jurisdiction over Rafal, the trial court should have granted the motion to dismiss.
We reverse and remand with instructions to dismiss the complaint against Rafal.
DANAHY, A.C.J., and LAZZARA, J., concur.