NIDA CORPORATION, Plaintiff,

v.

Ken NIDA, Defendant.

No. 6:00-CV-81ORL31C.

United States District Court,
M.D. Florida,
Orlando Division.

Oct. 20, 2000.

Stephen D. Milbrath, Allen, Dyer, Doppelt, Milbrath & Gilchrist, P.A., Orlando, FL, William J. Kananack, Melbourne, FL, for plaintiff.

Christopher T. Hill, Rumberger, Kirk & Caldwell, Orlando, FL, for defendant.

## ORDER

PRESNELL, District Judge.

Upon consideration of the Report and Recommendation of the Magistrate Judge (Doc. 29, filed September 13, 2000), the Defendant's objection to that report (Doc. 30, filed September 30, 2000), and the Plaintiff's response to that Objection (Doc.33, filed October 10, 2000), this Court concludes that the Plaintiff has adequately established personal jurisdiction pursuant to Florida's Long–Arm Statute, *see Posner v. Essex Ins. Co. Ltd.*, 178 F.3d 1209, 1217 (11th Cir.1999) (following "firmly established" Eleventh Circuit precedent interpreting subsection (1)(b) of Florida's Long–Arm Statute as applying when out-of-state tortious act causes in-state injury), and in accord with the Due Process Clause.

Accordingly, it is hereby **ORDERED AND ADJUDGED** that the Report and Recommendation of the Magistrate Judge (Doc. 29, filed September 13, 2000) is **AFFIRMED,** and the Defendant's Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 30, filed February 22, 2000) is **DENIED.**

## REPORT AND RECOMMENDATION

GLAZEBROOK, United States Magistrate Judge.

## TO THE UNITED STATES DISTRICT COURT

This cause came on for consideration at a hearing on August 15, 2000 on the following motion:

DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION. [Doc. No. 5]
FILED: February 22, 2000.
RECOMMENDATION DENIED.

## I. BACKGROUND AND PERTINENT FACTS

### A. *The Parties*

This dispute arises from the fact that both plaintiff (Nida Corporation) and defendant (Kevin Nida d/b/a Nida Companies) use the word "Nida" in pursuit of their respective businesses. Plaintiff is a Connecticut Corporation with its principal place of business in Melbourne, Florida ["Florida Nida"]. Docket No. 28 at ¶ 1; Docket No. 24 at ¶ A.1. Florida Nida was incorporated in 1972. Docket No. 28 at ¶ 7; Docket No. 24 at ¶ A.3. On October 28, 1975, Florida Nida obtained a registration for the mark "Nida" from the United States Patent and Trademark Office. Docket No. 28 at ¶ 8; Docket No. 24 at ¶ A.4. Florida Nida maintains a World–Wide Website with the address "www.nida.com." Docket No. 28 at ¶ 6; Docket No. 24 at ¶ C.1.

Defendant Kevin Nida is a Captain/Paramedic with the Los Angeles City Fire Department. Docket No. 28 at ¶ 13; Docket No. 24 at ¶ A.3. Born in 1960 [Docket No. 24 at ¶ B.2], Kevin Nida has done business as "Nida Companies" since April 1981 when he registered this fictitious name with the State of California ["California Nida"]. Docket No. 28 at ¶ 17; Docket No. 24 at ¶ B.5. California Nida's annual sales for 1999 exceeded one million dollars. Docket No. 28 at ¶ 14; Docket No. 7 at ¶ 15. California Nida maintains a World–Wide Website with the address "www.nidacom.com." Docket No. 28 at ¶ 16; Docket No. 24 at ¶ C.2.

### B. *The Present Action*

On October 22, 1998, Florida Nida received a fax on California Nida's letterhead which was apparently directed to Singer Products. Docket No. 24 at ¶ E.1. On August 3, 1999, a representative of Florida Nida contacted California Nida posing as a buyer for "new radio gear" and asked if Nida Companies "had any customers in the Florida/Georgia area." Docket

No. 24 at ¶ E.2. California Nida responded on August 3, 1999 that it had "sold our products to the Kennedy Space Center in Florida." Docket No. 24 at ¶ E.3. After an exchange of letters [Docket No. 15 at Tab 6], Florida Nida Florida initiated this lawsuit on January 21, 2000. Docket No. 1. On February 22, 2000, California Nida moved to dismiss the complaint for lack of personal jurisdiction. Docket No. 5. By order dated April 21, 2000, the Honorable Patricia C. Fawsett referred the motion to dismiss to the undersigned for an evidentiary hearing. Docket No. 17. On August 8, 2000, this case was reassigned to the Honorable Gregory A. Presnell. Docket No. 20. On August 15, 2000 the Court held an evidentiary hearing on the motion to dismiss. Docket No. 21.

## II. *THE LAW OF PERSONAL JURISDICTION*

An assessment of personal jurisdiction requires a two-part analysis. *Venetian Salami Co. v. Parthenais,* 554 So.2d 499, 502 (Fla.1989). In order to determine whether this Court has personal jurisdiction over non-resident defendants, the Court must first determine whether there is a basis for jurisdiction under Florida's long-arm statute, Fla. Stat. § 48.193. *See* Fed.R.Civ.P. 4(e)(1), (h), and (k); *Sculptchair, Inc. v. Century Arts, Ltd.,* 94 F.3d 623, 626—27 (11th Cir.1996). If the Court finds that personal jurisdiction exists under Florida's long-arm statute, the Court must then consider whether the defendant's contacts with the state of Florida are sufficient to satisfy the due process clause of the Fourteenth Amendment such that maintenance of the suit in Florida does not offend traditional notions of fair play and substantial justice. *See International Shoe Co. v. Washington,* 326 U.S. 310, 315–17, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *Cable/Home Communication Corp. v. Network Productions, Inc.,* 902 F.2d 829, 855 (11th Cir.1990); *Venetian Salami Co.,* 554 So.2d at 502 (Fla.1989). If both prongs of the jurisdictional test are satisfied—Florida's long-arm statute and the due process analysis—then the Court may exercise personal jurisdiction over the non-resident defendant. *Madara v. Hall,* 916 F.2d 1510, 1516 (11th Cir.1990).

### A. *The Florida Long–Arm Statute*

This Court examines the Florida long-arm statute as would the Florida Supreme Court because the reach of the statute is a question of state law. *See Oriental Imports & Exports, Inc. v. Maduro & Curiel's Bank, N.V.,* 701 F.2d 889, 890–91 (11th Cir.1983); *Structural Panels, Inc. v. Texas Aluminum Industries, Inc.,* 814 F.Supp. 1058, 1064 (M.D.Fla.1993). Florida's long-arm statute is strictly construed, and the plaintiff has the burden of proving facts which satisfy the criteria. *Oriental Imports & Exports,* 701 F.2d at 891. The pertinent subsections of Florida's long-arm statute provide:

(1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:

(a) Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.

\* \* \* \* \* \*

(b) Committing a tortious act within this state.

\* \* \* \* \* \*

Causing injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury, either:

1. The defendant was engaged in solicitation or service activities within this state; or

2. Products, materials, or things processed, serviced, or manufac-

tured by the defendant anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use.

\* \* \* \* \* \*

[3, 4] (2) A defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity.

Fla.Stat. § 48.193. Where directly conflicting affidavits cause the Court to hold an evidentiary hearing (*see Venetian Salami Co.*, 554 So.2d at 502), the plaintiff bears the burden of proving personal jurisdiction at the evidentiary hearing. *See Musiker v. Projectavision, Inc.*, 960 F.Supp. 292, 295 (S.D.Fla.1997). However, the defendant's submission of an affidavit containing mere conclusory allegations of ultimate fact are insufficient to shift to the plaintiff the burden of producing evidence supporting jurisdiction. *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1215 (11th Cir.1999). Also, with respect to those points upon which the competing affidavits do not conflict, the Court may accept as true the applicable allegations in the complaint for purposes of resolving jurisdictional issues under the requirements of the Florida long-arm statute and the Due Process Clause. *Posner*, 178 F.3d at 1215.

### 1. In–State Transaction of Business

▪ In order to establish that a non-resident defendant is carrying on a business or business venture in Florida, the Court must consider whether the sum of the defendant's collective business activities shows a general course of business activity in the state for pecuniary benefit. *Sculptchair, Inc.*, 94 F.3d at 627—28 (11th Cir.1996) (relatively insignificant and sporadic sales efforts of three to five transactions grossing only $3,000 nevertheless qualified as a general course of business activity in Florida for pecuniary benefit); *Musiker*, 960 F.Supp. at 295—96; *see also, Cauff Lippman & Co. v. Apogee Finance Group, Inc.*, 745 F.Supp. 678, 682 (S.D.Fla.

1990) (one meeting in Florida, negotiations, and other communications by letter, telex and telephone from out of state were insufficient to obtain personal jurisdiction over non-resident defendants); *Jasper v. Zara*, 595 So.2d 1075, 1075–76 (Fla. 2d DCA 1992) (no personal jurisdiction where the plaintiff initially solicited the defendant in New York by phone and the defendant subsequently communicated with the plaintiff and his accountant by telephone and letter over a period of 18 months); *Intercontinental Corp. v. Orlando Regional Medical Center*, 586 So.2d 1191, 1195 (Fla. 5th DCA 1991) (no personal jurisdiction where defendants' only contacts consisted of letters and telephone calls from Kentucky or Indiana into Florida, and a single meeting attended by defendants' counsel in Florida).

▪ A corporation may be subject to jurisdiction when it transacts business through its agents in the forum state, unless the agents are transacting business on their own account. *Sculptchair, Inc.*, 94 F.3d at 628 (11th Cir.1996). Under Florida law, an agency relationship has the following elements: 1.) the principal acknowledges that the agent will act for it; 2.) the agent accepts the undertaking; and 3.) the principal controls the actions of the agent. *See Goldschmidt v. Holman*, 571 So.2d 422, 424 n. 5 (Fla.1990); *accord, Ilgen v. Henderson Properties, Inc.*, 683 So.2d 513, 514—15 (Fla. 2d DCA 1996). Control is critical in determining agency. *See Parker v. Domino's Pizza, Inc.*, 629 So.2d 1026 (Fla. 4th DCA 1993); *accord, Sculptchair*, 94 F.3d at 629. Under Florida law, a principal's actions may give rise to apparent authority and agency. *Overseas Private Investment Corp. v. Metropolitan Dade County*, 47 F.3d 1111, 1114 (11th Cir.1995); *Borg–Warner Leasing v. Doyle Electric Company, Inc.*, 733 F.2d 833, 836 (11th Cir.1984); *Ja Dan, Inc. v. L–J, Inc.*, 898 F.Supp. 894, 900 (S.D.Fla. 1995).

Where a defendant conducts isolated, insubstantial business in Florida, the plain-

tiff must show that its cause of action arises from the defendant's business activity in Florida. Fla. Stat. § 48.193(1)(a), (2). Where a state's long-arm statute requires that the plaintiff's cause of action arise out of defendant's business activity in the forum state, the mailing of two cease and desist letters threatening a patent infringement lawsuit, without more, is of insufficient quality and degree to be the "transaction of business" in the forum state. *Graphic Controls Corp. v. Utah Medical Products, Inc.*, 149 F.3d 1382, 47 U.S.P.Q.2d 1622 (Fed.Cir.1998) (no personal jurisdiction where declaratory judgment action arose out of cease and desist letters, and not out of commercial activity in New York); *accord, Dainippon Screen Manufacturing Co., Ltd. v. CFMT, Inc.*, 142 F.3d 1266, 1270—71 (Fed.Cir.1998); *Genetic Implant Systems, Inc. v. Core–Vent Corp.*, 123 F.3d 1455, 1458—59 (Fed.Cir. 1997).

### 2. In–State Effects of Tort (Trademark Infringement) Committed Out of State

The various lower Florida courts are deeply divided on the issue of whether a tortious act committed outside the state resulting in injury inside the state subjects the actor to jurisdiction in Florida under Fla. Stat. § 48.193(1)(b). *Posner*, 178 F.3d at 1216. In the absence of a clear precedent of the Florida Supreme Court, the United States Court of Appeals for the Eleventh Circuit will apply the broader construction of § 48.193. *Posner*, 178 F.3d at 1217.

 To state a claim for trademark infringement, a plaintiff must show that: 1.) it has a mark distinctive enough to deserve protection under the Lanham Act; and 2.) defendant's use of it is likely to cause confusion. *Freedom Sav. and Loan Ass'n v. Way*, 757 F.2d 1176, 1179 (11th Cir.1985); *Investacorp, Inc. v. Arabian Inv. Banking Corp.*, 931 F.2d 1519, 1522–23 (11th Cir.1991); *Ice Cold Auto Air of Clearwater, Inc. v. Cold Air & Accessories, Inc.*, 828 F.Supp. 925 (M.D.Fla.1993). A certificate of registration acts as prima facie evidence of the mark's validity and of the registrant's exclusive right to use the trademark mark. 15 U.S.C. §§ 1057, 1115(a). Registration of the mark, therefore, provides the plaintiff with a presumption that the mark is "not merely descriptive or generic, or, if merely descriptive, is accorded secondary meaning. This presumption may, of course, be overcome by proof of descriptiveness, or by proof of genericness." *Liquid Controls Corp. v. Liquid Control Corp.*, 802 F.2d 934, 935 (7th Cir .1986) (citations omitted). Injury from trademark infringement occurs in the state where the trademark owner resides. *J.B. Oxford Holdings, Inc. v. Net Trade, Inc.*, 76 F.Supp.2d 1363, 1368 (S.D.Fla. 1999).

### B. *Due Process Analysis*

If there is a basis for asserting personal jurisdiction under the long-arm statute, the Court then considers due process. *Black v. Bryant*, 905 F.Supp. 1046, 1051 (M.D.Fla.1995). The due process analysis is a two-prong inquiry. First, the Court determines whether sufficient minimum contacts exist between the defendant and the forum state to satisfy the Due Process Clause of the Fourteenth Amendment. *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 258—60 (11th Cir.1996); *Madara*, 916 F.2d at 1510. Second, the Court determines whether the maintenance of the suit is reasonable, and does not violate "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Washington, Office of Unemployment Compensation & Placement*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

### 1. Minimum Contacts

#### a. Generally

In determining whether sufficient minimum contacts exist with the state of Florida, the Court considers whether the defendant has purposefully established minimum contacts with the forum state out of which the instant action arises. *See Hoechst*, 896 F.Supp. at 1193 (citing

*Asahi Metal Indus. Co. v. Superior Ct. of Cal., Solano Cty.,* 480 U.S. 102, 108–09, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987)). The Court assesses whether the defendant has purposefully availed itself of the privilege of conducting activities in the forum state, thus invoking the benefits and protection of its laws. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). The cause of action must arise out of the contacts with the forum state. *See Sculptchair, Inc.,* 94 F.3d at 631 (no legitimate dispute that the marketing of infringing goods in Florida is intimately connected with a patent and trademark holder's cause of action for patent infringement, trademark infringement, unfair competition, and breach of a licensing contract).

The "purposeful availment" requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person. *Rudzewicz,* 471 U.S. at 475, 105 S.Ct. 2174; *accord World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 299, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 417, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). Adequate contacts proximately result from a defendant's actions which create a "substantial connection" with the forum State. *Burger King,* 471 U.S. at 475, 105 S.Ct. 2174. The substantial connection between a defendant and the forum state must come about by an action of the defendant purposefully directed toward the forum state. *See Asahi,* 480 U.S. at 109–11, 107 S.Ct. 1026.

### b. The Stream of Commerce

A plurality of the Supreme Court has stated that the placement of a product into the stream of commerce is not an act purposefully directed toward the forum state, even if the defendant knows that commerce will sweep the product into the forum state. *See Asahi,* 480 U.S. at 112, 107 S.Ct. 1026. Nevertheless, additional

conduct of the defendant may indicate an intent or purpose to serve the market in the forum state, such as marketing the product through a distributor who has agreed to serve as the sales agent in the forum state, or by establishing channels for providing regular advice to customers in the forum state. *Asahi,* 480 U.S. at 112, 107 S.Ct. 1026. *See also, Vermeulen v. Renault, U.S.A., Inc.,* 985 F.2d 1534, 1545—48 (11th Cir.) (assessment that personal jurisdiction law remains unsettled after *Asahi* ), *cert. denied,* 508 U.S. 907, 113 S.Ct. 2334, 124 L.Ed.2d 246 (1993).

### c. The Internet Context

 Active Internet solicitation may subject a defendant to personal jurisdiction. *See Kim v. Keenan,* 71 F.Supp.2d. 1228, 1234 (M.D.Fla.1999) (Kovachevich, C. J.), *citing Thompson v. Handa–Lopez, Inc.,* 998 F.Supp. 738 (W.D.Tex.1998); *Zippo Manufacturing Co. v.. Zippo Dot Com, Inc.,* 952 F.Supp. 1119 (W.D.Pa. 1997); *Inset Systems, Inc. v. Instruction Set, Inc.,* 937 F.Supp. 161 (D.Conn.1996); *Bochan v. La Fontaine,* 68 F.Supp.2d 692 (E.D.Va.1999). However, the fact that many companies have established virtual beachheads on the Internet and the fact that the Internet is now accessible from almost any point on the globe have created complex, new considerations in counting minimum contacts for purposes of determining personal jurisdiction. *Butler v. Beer Across America,* 83 F.Supp.2d. 1261, 1267–8 (M.D.Ala.2000). One influential lower court decision has described the minimum contacts issue in the Internet context in terms of a spectrum:

> At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply

posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

*Zippo Manufacturing Co. v. Zippo Dot Com, Inc.* 952 F.Supp. 1119, 1124 (W.D.Pa. 1997) (citations omitted). Several United States Circuit Courts have followed the approach of the *Zippo* court. *See, e.g., Soma Medical International v. Standard Chartered Bank*, 196 F.3d 1292, 1296 (10th Cir.1999); *Mink v. AAAA Development LLC*, 190 F.3d 333, 336 (5th Cir.1999); *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 419 (9th Cir.1997).

In addition to the *Zippo* framework, at least one Circuit Court has looked to the Supreme Court's pre-Internet decision in *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984) regarding the in-state effects of a defendant's out-of-state activities. *See Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316 (9th Cir.1998). The Ninth Circuit noted that, under *Calder*, jurisdiction over an out-of-state defendant could be established on the basis of: 1.) intentional actions (in *Calder*, libel); 2) expressly aimed at the forum state; 3.) causing harm, the brunt of which is suffered—and which the defendant knows is likely to be suffered—in the forum state. *Panavision*, 141 F.3d at 1321, *citing Core-Vent Corp. v. Nobel Industries AB*, 11 F.3d 1482, 1486 (9th Cir.1993). Applying *Calder*, the *Panavision* court reached the opposite result from its decision the prior year in *Cybersell*. The court described as follows the key difference:

> We agree that simply registering someone else's trademark as a domain name

and posting a web site on the Internet is not sufficient to subject a party domiciled in one state to jurisdiction in another. *Cybersell*, 130 F.3d at 418. As we said in *Cybersell*, there must be "something more" to demonstrate that the defendant directed his activity toward the forum state. *Id.* Here, that has been shown. Toeppen engaged in a scheme to register Panavision's trademarks as his domain names for the purpose of extorting money from Panavision. His conduct, as he knew it likely would, had the effect of injuring Panavision in California where Panavision has its principal place of business and where the movie and television industry is centered. [FN3] Under the "effects test," the purposeful availment requirement necessary for specific, personal jurisdiction is satisfied.

*Panavision*, 141 F.3d at 1322.

### 2. Reasonableness, Fair Play, and Substantial Justice

In the second prong of the due process analysis, the Court determines whether the maintenance of the suit is reasonable, and does not violate "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Washington, Office of Unemployment Compensation & Placement*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The Court considers the defendant's contacts with the forum state in light of several factors, including: 1.) the burden on the defendant in defending the lawsuit in the forum state; 2.) the forum state's interest in adjudicating the dispute; 3.) plaintiff's interest in obtaining convenient and effective relief; 4.) interstate judicial system's interest in obtaining most efficient resolution of the controversy; and 5.) shared interests of the several states in furthering fundamental substantive social policies. *See Asahi*, 480 U.S. at 113, 107 S.Ct. 1026; *Madara*, 916 F.2d at 1517.

## III. APPLICATION AND ANALYSIS

California Nida's contacts with Florida are more than sufficient to satisfy both the Florida Long–Arm Statute and the Due Process Clause. The Court addresses these in turn.

### A. The Florida Long–Arm Statute

■■ Florida Nida has met its burden of demonstrating long-arm jurisdiction under Fla. Stat. § 48.193(1)(b). Specifically, Florida Nida has adequately alleged the two elements necessary to state a claim for the tort of trademark infringement: 1.) that it has a mark distinctive enough to deserve protection under the Lanham Act; and 2 .) that defendant's use of it is likely to cause confusion. Both parties concede that Florida Nida obtained a registration for the mark "Nida" from the United States Patent and Trademark Office on October 28, 1975. Docket No. 28 at ¶ 8; Docket No. 24 at ¶ A.4. This registration serves as prima facie evidence of the mark's validity and of the registrant's exclusive right to use the trademark mark. 15 U.S.C. §§ 1057, 1115(a). Therefore, for purposes of the present analysis, the first requirement (distinctiveness) is satisfied.

California Nida vigorously challenges Florida Nida's showing with respect to the second element (likelihood of confusion). The Court has carefully reviewed both the record evidence and the evidence presented and proffered at the August 15, 2000 hearing, including the testimony of David Ventrane (the only live witness called by either party at the hearing). Florida Nida has satisfied its burden with respect to the second element (likelihood of confusion). Because Florida Nida has satisfied subsection (1)(b) of the Florida Long–Arm Statute (tort in Florida), the Court need not reach the issue of whether either subsections (1)(a) (doing business in Florida) or (1)(f)(1) (in-state solicitation) might also be satisfied.

### B. The Due Process Clause

California Nida has contacts with the State of Florida comfortably in excess of the bare Constitutional minimum necessary to satisfy the Due Process Clause. Maintenance of this action in Florida comports with traditional notions of reasonableness, fair play, and substantial justice.

#### 1. Minimum Contacts

■■ Between 1995 and January 21, 2000 (the date on which this action was filed), California Nida derived a total of $27,428 [1] in revenue from sales of its products in Florida. Docket No. 24 at ¶¶ D.6, D.7, D.19. All of these sales were transacted with one of two Florida business: Maguire Enterprises ["Maguire"] and Singer Products ["Singer"]. Docket No. 24 at ¶¶ D.1, D.12. During this period, California Nida made six separate sales to Maguire (January 29, 1996 for $12,957.03; August 2, 1996 for $859.47; September 24, 1996 for $4,322.69; January 30, 1997 for $739.47; September 9, 1997 for $2,630.39; and October 11, 1997 for $760.97) and two separate sales to Singer (January 27, 1999 for $1,733 and October 4, 1999 for $3,414). Docket No. 22 at Exhibit 1. Since January 21, 2000, California Nida has made at least one additional sale to Singer (on June 27, 2000, in an amount of $694.80). Docket No. 22 at Exhibit 1. Also, California Nida made $7,468.65 in purchases from Maguire on as many as fifteen occasions [2] between January 21, 1997 and May 7, 1998. Docket No. 24 at ¶¶ D.17, D.18.

---

**1.** This is the amount that California Nida has stipulated to in its proposed findings of fact and conclusions of law at Docket No. 24. The Court's own calculation produces a total that is $10.98 lower ($27,417.02). The discrepancy (which is perhaps due to rounding error) is immaterial for purposes of the present analysis.

**2.** Attached as an exhibit to Kevin Nida's deposition in this matter is a composite of seventeen invoices issued by Maguire to California Nida. Fifteen of these reflect balances dues. However, it is unclear from the corresponding testimony of Kevin Nida which, if any, of these invoices reflect related or overlapping transactions (as opposed to separate transactions).

Approximately forty-six percent of California Nida's total Florida revenues (or $12,957.03) is attributable to a single 1996 transaction with Maguire. Docket No. 22 at Exhibit 1. The transaction involved the sale of several types of components (consisting of a metal housing, a battery, a charger and a radio) that Maguire subsequently integrated into one or more "Apcom 12" units for delivery to the National Aeronautics and Space Administration's Kennedy Space Center at Cape Canaveral, Florida [the "NASA sale"]. Docket No. 24 at ¶ D.26. Both California Nida and Maguire participated actively in procuring the NASA sale. Docket No. 26 at pages 33–35. At one point California Nida shipped a mockup of the proposed design to Maguire for evaluation. Docket No. 26 at page 41, lines 13–19. Also, NASA representatives contacted California Nida directly on several occasions with design-related concerns. Docket No. 26 at page 33, lines 20–25; page 34, lines 20–22. In fact, the degree of collaboration on the NASA sale was so great that California Nida deemed it necessary to include the following statement in a letter written directly to NASA: "[y]our closest authorized dealer is Maguire Enterprises in Fort Lauderdale, Florida." Docket No. 26 at Exhibit 2. This statement was designed to "make sure that Maguire knew that we were not trying to take that customer away from Maguire." Docket No. 26 at pages 30, lines 22–24.

California Nida's collaborative relationship with Maguire dates back at least as far as 1994. Docket No. 26 at pages 26–27. Nida California has provided price quotations to Maguire on at least five occasions. Docket No. 26 at Exhibits 1, 7, 8, 9, 14. On at least two occasions, California Nida has sent Maguire draft schematic drawings for review and comment. Docket No. 26 at Exhibits 6 and 15. On one occasion, California Nida sent Maguire twenty copies each of its brochure and price list. Docket No. 26 at Exhibit 12.

California Nida has done work for Maguire on a gratis basis. Docket No. 26 at page 46, line 12.

California Nida obtained the Internet domain name for its "www.nidacom.com" website in approximately 1996. Docket No. 24 at ¶ C.2. The site is accessible by Florida residents.[3] California Nida has also placed advertisements in at least one industry-specific periodical (*The Public Safety Product News*) that is distributed in Florida. Docket No. 24 at ¶ D.33. Circulation of this periodical in Florida was 1,061 recipients out of 28,045 in April/May of 1997 (3.8%), and 319 recipients out of 8,555 in October/November of 1997 (0.4%). Docket No. 24 at ¶ D.33.

### 2. Reasonableness, Fair Play, and Substantial Justice

■ The Court has considered 1.) the burden on the defendant in defending the lawsuit in the forum state; 2.) the forum state's interest in adjudicating the dispute; 3.) plaintiff's interest in obtaining convenient and effective relief; 4.) interstate judicial system's interest in obtaining most efficient resolution of the controversy; and 5.) shared interests of the several states in furthering fundamental substantive social policies. On the whole, these factors weigh in favor of maintaining the present action in Florida. The burden on the defendant of defending himself in Florida, though hardly insignificant, is no greater than any non-resident defendant would face as a price of doing business here. Moreover, the modern means of transportation and communication reduce this burden greatly. *Madara*, 916 F.2d at 1525. Countervailing this burden on the defendant are the strong interests of Florida Nida and the State of Florida in obtaining relief. *See Sculptchair*, 94 F.3d at 632 (citing *Asahi* for the proposition that "[w]hen minimum contacts have been established, often the interests of the plaintiff and the forum ... will justify even the

3. At the August 15, 2000 hearing, counsel for California Nida stipulated that this website, though largely passive, falls within the middle range of the *Zippo* interactivity spectrum.

serious burdens placed on the alien defendant."). Accordingly, it is

**RECOMMENDED** that the defendant's motion to dismiss for lack of personal jurisdiction [Docket No. 5] be **DENIED.**

Failure to file and serve written objections to the proposed findings and recommendations in this report, pursuant to 28 U.S.C. § 636(b)(1)(B) and (e) and Local Rule 6.02, within ten days of the date of its filing shall bar an aggrieved party from a de novo determination by the district court of issues covered in the report, and shall bar an aggrieved party from attacking the factual findings on appeal.

September 13, 2000.